UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAYLOR BATISTE, on Behalf of Herself and on Behalf of All Others Similarly Situated, | § § § § | |
| | § | CIVIL ACTION NO. 4:20-cv-00655 |
| Plaintiff, | § | |
| | § | |
| V. | § | JURY TRIAL DEMANDED |
| | § | |
| TOPGOLF INTERNATIONAL, INC. and TOPGOLF USA SPRING HOLDINGS, LLC, | § § § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

1.      The case implicates Defendants TopGolf International, Inc.'s and TopGolf USA Spring Holdings, LLC's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) on behalf of herself and on behalf of all similarly situated workers.

2.      Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provision of the FLSA. Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay its employees less than the minimum wage rate by taking a "tip credit" against the minimum wage requirement based upon the amount of tips the employees received from customers. *See Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010)

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit

1

pursuant to the provisions of section 3(m) of the FLSA. *See id.* stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as kitchen staff. *See, e.g., Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008); *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)(for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)). "Where a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed the full $7.25 minimum wage and reimbursement of the amount of tips that were improperly utilized by the employer." DOL Fact sheet #15, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA). *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See, e.g., Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8.      Defendants' violated the FLSA in the following respects:

   a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

   b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced her wages below the minimum hourly wage required for tipped employees.

   c. **Violation for requiring Plaintiff to give up a portion of her tips to ineligible workers:** Plaintiff was required to pay a portion of her tips to the position known as a "mucker" whose job it was to clean dishes.

d. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, setting up buffet stands, filling condiments, cleaning ledges, washing trays, and washing appliances.

e. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including, but not limited to, general cleaning of the restaurant, cleaning tables, rolling silverware, refilling condiments, setting up tables, sweeping floors, and cleaning and stocking the serving line.

9.      As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiff worked in this District and was denied the wages she is entitled under the FLSA in this District.

## PARTIES AND PERSONAL JURISDICTION

12.      Plaintiff Taylor Batiste is an individual residing in Spring, Texas.  Her written consent to this action is attached hereto.

4

13.     The FLSA Class Members are all current and former bayhosts and bartenders employed by Defendants for at least one week during the three year period prior to the filing of this action to the present.

14.     Defendant TopGolf USA Spring Holdings, LLC is a domestic limited liability company.  Said defendant may be served with process by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

15.     Defendant TopGolf International, Inc. is a domestic corporation.  Said defendant may be served with process by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

16.     This Court has personal jurisdiction over Defendants because each business does business in Texas, hires Texas residents, contracts with Texas residents, owns or leases property in Texas, and because Defendants are headquartered in Texas.

## COVERAGE

17.     At all material times, Defendants have been employers within the meaning of the FLSA.  29 U.S.C. § 203(d).

18.     At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

19.     At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

20.     At all material times, Plaintiff and Class Members were employees engaged in the commerce or the production of goods for commerce.

21.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

22.     Defendants operate a nationwide chain of entertainment establishments under the name TopGolf under the control of the same senior level management.  Indeed, the establishments advertise themselves as a unified entity through the same website.

23.     Defendants represent themselves to the public as company operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

24.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

25.     Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

## FACTS

26.     Defendants operate a nationwide chain of golf related restaurants under the trade name "TopGolf" throughout the U.S.   Defendants operate in Texas, Virginia, Illinois, Georgia, Colorado, New Jersey, Arizona, Oregon, Florida, Nevada, Oklahoma, Kansas, California, Utah, and Ohio.

27.     Defendants employ "bayhosts" and "bartenders" to provide services to their customers.

28.     A "bayhost" is a server who delivers food and drinks to customers.

29.     A bartender is a worker who makes various alcoholic beverages to customers.

30.     Plaintiff worked as both a bayhost and bartender for Defendants. She worked at the Spring, Texas location for Defendants from approximately April 2017 to May 2018.

31.     As a bayhost, Plaintiff was paid less than the federal minimum wage of $7.25 per hour.

32.     As a bartender, Plaintiff was paid less than the federal minimum wage of $7.25 per hour.

33.     Defendants attempted to utilize the tip credit to meet their minimum wage obligation to Plaintiff.

34.     Defendants attempted to utilize the trip credit to meet their minimum wage obligation to the Class Members.

35.     However, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

36.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

7

37.     These duties include but are not limited to the following: sweeping floors, cleaning furniture, mopping floors, cleaning ledges, washing trays, and washing appliances, amongst other activities, that were not related to her tipped duties.

38.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

39.     Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to cleaning tables, rolling silverware, refilling condiments, and setting up tables.

40.     Further, Defendants required Plaintiff and the Class Members to perform non-tipped side work at the start and end of every shift. This included times before TopGolf opened and after TopGolf closed and customers had left.  Indeed, when the restaurant was closed Plaintiff and the Class Members had no opportunity to earn tips because customers were not there.  At times, they spent 30 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

41.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

42.     During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

43.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

44.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

45.     Moreover, Defendants required their bayhosts to work as "Event Ambassadors." Event Ambassadors were servers for private parties at TopGolf.  Event Ambassadors were required to arrive 1.5 to 2.5 hours before the start of the event.  During the time before the event started, the Event Ambassadors were required to set up buffet stations, set up tables, set up any party favors, and other side work.  This work was done well before the start of the event and there was no opportunity to earn tips.  For this work, Event Ambassadors were paid less than the federal minimum wage.

46.     Further, Event Ambassadors were required to arrive at TopGolf approximately 15-20 minutes before the start of their scheduled shift.  However, they were not allowed to clock-in when they arrived.  Instead, they were required to wait until the start time of their scheduled shift to clock-in.  During this 15-20 minute "off the clock" period, the Event Ambassadors were required to meet with a manager to find out the location of the private party, to meet with an event coordinator to find out information about the party, and to check with the kitchen about the type of food to be served.  All of this work was performed for the benefit of Defendants and went uncompensated.

47.     Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiff.

48.      Defendants use a point-of-sale system to record hours worked by their tipped employees.  Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff.

49.      In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

50.      However, Defendants did not allow their bayhosts and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

51.      Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

52.      Defendants further violated the FLSA by enforcing a policy and practice of requiring Plaintiff and the Class Members to give up a portion of their tips to workers employed as "muckers." Muckers were employees who were not eligible to receive tips. The muckers gathered large bins filled with dirty dishes. They then cleaned the dishes and cleaned the dish cart. The muckers primarily worked in the kitchen and did not interact with customers.

53.      Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including non-slick shoes, black pants, and black socks. These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

54.      Because Defendants paid their tipped employees below the minimum wage and at the minimum of $2.13 per hour, any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

55.       In other words, by requiring Plaintiff and the Class Members to pay for these work related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

56.      Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

57.      As such, Plaintiff and the FLSA Class Members were not compensated at the Federally mandated minimum wage.

58.      Defendants know or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff was not based on a good faith and reasonable belief that its conduct complied with the law.

59.      Defendants may claim that they have complied with the law based upon the Department of Labor opinion letter FLSA2018-27 issued on November 8, 2018.  However, nearly every court to have considered this opinion letter has held that the opinion letter is not entitled to any deference.  *See Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Miss. 2019).

60.     Even if this Court were to provide some deference to opinion letter FLSA2018-27, Defendants still failed to comply with the law.  Defendants failed to provide proper notice, as stated in this Complaint.  Defendants failed to pay even the minimum tip hourly rate, as stated in this Complaint.  Defendants illegally required Plaintiff and the Class Members to share tips with ineligible employees, as stated in this Complaint.  Defendants also illegally required Plaintiff and the Class Members to work "off the clock," as stated in this Complaint.

61.     Additionally, Defendants illegally took a tip credit for time spent performing tasks not contained in the O*NET Task list, including but not limited to, the time spent by Plaintiff and the Class Members cleaning ledges, washing trays, and washing appliances.

62.     Finally, Defendants illegally required Plaintiff and the Class Members to perform side work that was not contemporaneous with their duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.  That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 30 minutes to two hours before TopGolf was open or after it was closed, when TopGolf was not open to customers.  Moreover, Defendants required the Event Ambassadors to arrive 1.5 to 2.5 before the start of events, when there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate.

## COLLECTIVE ACTION ALLEGATIONS

63.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as bartenders and bayhosts for at least one week during the three year period prior to the commencement of this action to the present.

64.     Plaintiff has actual knowledge, through conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

65.     The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

66.     Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, were subject to the same illegal deductions from their wages and tips, and performed substantial work that was unrelated to their tip producing duties.

67.     Further, the Class Members were, like Plaintiff, not properly informed of Defendants' intent to utilize the tip credit.

68.     Moreover, the Class Members were also subject to deductions and expenses that either dropped their compensation below the minimum wage or resulted in them not retaining all of their tips.

69.     Plaintiff and the Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

70.     The names and address of the Class Members of the collective action are available from Defendants' records.   To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

71.     Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

72.     As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former bayhosts and bartenders employed by Defendants for at least one week during the three year period prior to the filing of this action to the present.**

## CAUSES OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

73.     Plaintiff incorporates the preceding paragraphs by reference.

74.     This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

75.     Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendants.

76.     Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

77.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the minimum wage rate.  Defendants' violations of the FLSA were willful and not based on a good faith belief that their conduct did not violate the FLSA.

## WAGE DAMAGES SOUGHT

78.     Plaintiff and the Class Members are entitled to receive the difference between the minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

79.     Plaintiff and the Class Members are entitled to reimbursement for all illegal deductions and withheld tips.

80.     Plaintiff and the Class Members are entitled to reimbursement for all work related expenses they paid.

81.     Plaintiff and the Class Members are entitled to liquidated damages.

82.     Plaintiff and the Class Members are also entitled to recover their attorney's fees and

costs as required by the FLSA.

## JURY DEMAND

83.     Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend

VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

84.     For these reasons, Plaintiff respectfully requests that judgment be entered in her favor

awarding her and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

d.  Reasonable attorney's fees, costs, and expenses of this action;

e.  Pre and post judgment interest; and

f.  Such other and further relief to which Plaintiff and the Class Members may be entitled,
    both in law and in equity.

Respectfully submitted,

HODGES & FOTY, L.L.P.

By: /s/ Don J. Foty
    Don J. Foty
    DFoty@hftrialfirm.com
    Texas State Bar No. 24050022
    4409 Montrose Blvd, Ste. 200
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116

ATTORNEY FOR PLAINTIFF AND CLASS
MEMBERS